**FILED**

**JULY 7, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**RECEIVED**
Jun 5 2008
JUN - 5 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Gary Frederico Ellison
_____

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

Micheal Minnear, Brad Curie,
John Doe 1, John Doe 2, John
Doe 3, John Doe 4, Anderson
Ward, Jason Daniellian, and
Micheal Sheahan

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

**08CV3247**
**JUDGE LEINENWEBER**
**MAG. JUDGE BROWN**

(To be supplied by the Clerk of this Court)

**CHECK ONE ONLY:**

X    **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983 U.S. Code** (state, county, or municipal defendants)

_____    **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE 28 SECTION 1331 U.S. Code** (federal defendants)

_____    **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

I. **Plaintiff**

    A. Name: Gary Ellison

    B. List all aliases: None

    C. Prisoner identification number: K81210

    D. Place of present confinement: Menard Correctional

    E. Address: 711 Kaskaskia Road, Menard Illinois 62259-0711

II. **Defendants**

    A. Defendant: Micheal Minnear

       Title: Investigator

       Place of employment: Illinois State Police Agency

    B. Defendant: Brad Curie

       Title: Deputy Director of Intelligence

       Place of employment: Illinois Department of Corrections

    C. Defendant: John Doe 1

       Title: Person in charge of housing assignment at Illinois River Correctional

       Place of employment: Illinois Department of Corrections

    D. Defendant: John Doe 2

       Title: Person in charge of internal affairs at Illinois River Correctional

       Place of employment: Illinois Department of Corrections

    E. Defendant: John Doe 3

       Title: Person in charge of assigning Electronic Home Monitoring Detention

       Place of employment: Illinois Department of Corrections

    F. Defendant: Anderson Ward

       Title: Attorney

       Place of employment: Illinois Bar Association

G. Defendant: Jason Daniellian

   Title: Attorney

   Place of employment: Illinois Bar Association

H. Defendant: John Doe 4

   Title: Circut Court Judge

   Place of employment: Cook County Circut Court

I. Defendant: Micheal Sheahan

   Title: Sherriff in charge of Cook County Jail

   Place of employment: Cook County Jail

III.  **List ALL lawsuits you have filed in any state or federal court in the United States**

    A. Name of case and docket number: Gary Ellison VS County of Cook, et al; Case 1:05-CV-06236

    B. Approximate date of filing lawsuit: October 2005.

    C. List all plaintiffs, including any aliases: Gary Ellison, No Aliases.

    D. List all defendants: Sherriff Micheal Sheahan for Cook County Jail.

    E. Court in which the lawsuit was filed: Federal Court, Northern District.

    F. Name of judge to whom case was assigned: Judge Coar.

    G. Basic claim made: Cruel and Unusual Punishment, Battery.

    H. Disposition of this case: Case was voluntarily dismissed against the plaintiffs wishes by defendant Anderson Ward.

    I. Approximate date of disposition: April 2007.

IV. **FACTS**

CONSPIRACY AGAINST RIGHTS, CRUEL AND UNUSUAL PUNISHMENT

During Febuary of 2002, while the plaintiff was incarcerated in the Illinois Department of Corrections, defendant Micheal Minnear, an Illinois State Police detective, contacted defendant Brad Curie, the Illinois Department of Corrections Deputy Director of Intelligence, and requested that defendant Curie have IDOC inmates interrogate the plaintiff.
* Exibit 2, R126 / line 1 - 5

Defendant Curie agreed to have inmates interrogate the plaintiff.
* Exibit 3, R127 / line 1 - 5

The plaintiff was at that time incarcerated in Sheridan Correctional and was relocated to Illinois River Correctional to be housed near two specific homosexual inmates.

Defendant John Doe 1 then housed the plaintiff in the cell with the homosexual inmate Douglas __, and the second homosexual inmate upon the tier with the plaintiff was Tommie Armstrong.

The plaintiff was immediately targeted by both inmates and sexually harrassed until the plaintiff was forced into a violent confrontation with his cellmate, Douglas __, in effort to maintain personal space.

Both the plaintiff and inmate Douglas __ were sent to segregation for fighting.

The plaintiff then had his DNA sample and blood stolen by defendant Curie and defendant John Doe 2, who stated to the plaintiff that it was a mandatory policy to test for disease transmittable through blood contact following any fight in Illinois River.

Illinois River had no such mandatory policy for testing, and the plaintiffs DNA and blood was taken solely for the purpose of being given to defendant Minnear, and was given to defendant Minnear.

When the plaintiff was released from segregation, he was rehoused upon the tier with inmate Armstrong.

Due to Armstrongs sexual advances, the plaintiff was forced to insulate himself from Armstrong within a gang organization situated upon the plaintiffs tier.

Defendant John Doe 1 then had the plaintiff and Armstrong relocated to another section of the prison together, purposely removing the plaintiffs buffer against Armstrong.

Armstrong again began accosting the plaintiff due to request by prison authority to befriend the plaintiff, and in attempt to do so, Armstrong offered the plaintiff oral sex, and anal sex as prelude to gaining the plaintiffs confidence.

Armstrong would also stare at the plaintiffs crotch and stalk the plaintiff while the plaintiff showered.

In response, the plaintiff spoke to low level authority and

had himself removed from that particular tier that gave Armstrong access
to the plaintiff.

The very next day, defendant John Doe 1 had the plaintiff replaced
upon the tier with  inmate Armstrong.

Armstrong again attempted to befriend the plaintiff with renewed
vigor and sexual offers, and in response the plaintiff threatened to
stab Armstrong lest he leave the plaintiff alone.

For months afterward, the plaintiff was not bothered.

## VIOLATION OF DUE PROCESS, AGGRAVATED STALKING

Weeks before the plaintiff was to be released on parole, inmate
Armstrong was voluntarily admitted to the segregation unit and prepped
for an Electronic Surveillance operation upon which application for
authorization the plaintiff was named.
* Exibit 3, R127 / line 22 through Exibit 4, R128 / line 9

The plaintiff had previously evaded Armstrong entirely and
due to the plaintiffs evasiveness, defendant John Doe 2 forced the plaintiff
into seclusion with inmate Armstrong.

The plaintiff was brought to segregation and placed in the
cell with Armstrong due to defendant John Doe 2 reporting that the plaintiff
was running a gambling venue inside prison, which was a fabrication.

Inmate Armstrong began harrassing the plaintiff with displays of his buttocks and body, and the plaintiff was denied a change of cellmate.

The plaintiff was then again forced to give a second DNA sample before permissible by law or apart from the decree that gave specific time for IDOC inmates to be required to give sample.

The plaintiff had been threatened by internal affairs that his upcoming parole would be violated if he did not comply.

Once the plaintiff was released on parole, defendant Minnear contacted the plaintiffs parole officer, Ronald Trujillio, and requested that Trujillio violate the plaintiffs parole although the plaintiff had committed no violation.

Trujillio refused and defendant Curie had the plaintiff reassigned to another parole officer.

Defendant Curie and defendant Joh Doe 3 then had the plaintiff placed on ' Electronic Home Monitoring Detention ' which was not apart of the plaintiffs releasal conditions emplaced by the Parole Board.

The plaintiff therefore acquired employment that allowed for a mandatory fourteen hours of movement.

The plaintiff was then taken into custody by an enraged defendant Minnear while driving to work, and taken to Riverdale Police Department before being transfered to Homan Square Police Department.

The plaintiff was not allowed a call at Riverdale Police Department and was refused a call to family and attorney for over 12 hours while at Homan Square Police Department.

The plaintiff was interrogated by defendant Minnear and the plaintiff requested his attorney and remained silent.

Defendant Minnear then threatened the plaintiff stating that the plaintiff did not know who he was up against and if the plaintiff did not cooperate that he, defendant Minnear, would have friends waiting to assault the plaintiff in Cook County Jail.

The plaintiff was then charged with murder and sent to the Cook County Jail.

## BATTERY, DENIAL OF MEDICAL CARE

Shortly after being jailed, the plaintiff was sent to the segregation unit of Cook County Jail, division 11, and severely beaten by sherriffs while handcuffed.
* Photograph Exibit.

The plaintiff was kicked and struck in the face numerous times while sherriffs held the plaintiffs face exposed by the plaintiffs hair, and the plaintiffs face was then repeatedly bashed into the floor unprotected.

The plaintiff was kicked in the face, head, body, and stomped before numerous witnesses.

The plaintiff received a broken eye socket, sutures thoughout his face, swollen eyes and lips, broken teeth, knots upon his scalp and contusions over his entire body.

* Photograph Exibit

This attack occurred approximately 11:00pm, before shift change.

The plaintiff was taken to the medical unit, but although extremely bloody and visibly in need of aid to open and bleeding wounds, the plaintiff was not allowed to be seen or tended to by nurses or doctors until approximately 4:00am.

## LEGAL MALPRACTICE, NEGLIGENCE

The plaintiff hired an attorney, defendant Anderson Ward, to emplace a civil action against the Cook County Jail.

Defendant Ward had been excited by the prospects and had instructed the plaintiff to claim unhad aches and pains to county doctors to strengthen the ' already strong ' lawsuit.

Weeks later, the plaintiff received a call from a associate of Ward PC, Letheal N. Johnson, who stated that defendant Ward was dismissing the plaintiffs lawsuit.

Johnson stated to the plaintiff that there were some people that they (defendant Ward) had been in contact with who wished to make the lawsuit go away and since the recoverable amount would be limited –

and furthermore, for the plaintiffs safety ~ it were best that the plaintiff drop the issue.

* Exibit 12


The plaintiff did not agree with the motion for dismissal and demanded that defendant Ward remove himself as representation so that the plaintiff could continue pro-se.


Johnson stated to the plaintiff that such a move was an impossibility and then stated reasons as to why the lawsuit should be dismissed.


Johnsons insisted that there were no witnesses that the offices of Ward PC knew of although both the plaintiff and the plaintiffs family had informed defendant Ward that the plaintiff had been assaulted before over twenty inmates, three of those whose names the plaintiff knew and told to defendant Ward.

* Exibit 12


Johnson then stated falsely that there was a lack of evidence when defendant Ward was in possession of photographs taken by investigators the day following the attack by sherriffs.

* Exibit 12 and Photograph Exibit


Defendant Ward was also knowledgeable of the fact that the sherriffs had sustained no injuries and lacked evidence to justify their claim that the plaintiff had been acting violently as opposed to the sherriffs attacking the plaintiff without cause while handcuffed due to police requested retailiation.

The plaintiff had made defendant Ward aware of defendant Minnears previous threats to have friends waiting on the plaintiff in the Cook County Jail.

Johnson assured the plaintiff that defendant Ward would send case papers and relevant information to the plaintiff so that the plaintiff could refile pro-se.
* Exibit 12

Defendant Ward refused to follow through with sending any case papers, or relevant information to the plaintiff, even after the plaintiff wrote numerous letters of reminder to defendant Ward.

During the plaintiffs refiling period, the plaintiff was denied access to the law library and was unable to study the methods of refiling.

The plaintiff nevertheless hired a knowledgeable inmate to file an objection, to which, the judge overseeing the lawsuit instructed the plaintiff to confer with defendant Ward, whom the plaintiff had hired.
* Exibits 13 and 14

## LEGAL MALPRACTICE, NEGLIGENCE

At the plaintiffs criminal trial for murder, the plaintiffs attorney, defendant Jason Daniellian, refused to litigate pre-trial motions pertinent to the plaintiffs defense, three motions to quash arrest previously entered by attorney Patrick McKeigue.

Attorney McKeigue had been relieved after telling the plaintiff
that there was something ' wrong ' with the states case, whereafter,
the plaintiff was assigned another attorney who also veiwed the states
case against the plaintiff with suspicion, and he was quickly relieved.

Defendant Daniellian, however, told the plaintiff that the
state had done nothing wrong and then purposely misinformed the plaintiff
stating that the three pre-trial motions entered by attorney McKeigue
needed to not be litigated before trial because the title of ' pre-trial '
meant only that ' pre-trial motions ' were the type of motions allowed
to be litigated before trial commenced as well as during.

Defendant Daniellian then stated to the plaintiff that it were
his intentions to argue motions to quash arrest when and if during testimony
by state witnesses, information constituting the basis to which the
motions to quash arrest sought to litigate, was introduced.

When information constituting the basis of the three motions
to quash arrest was introduced, the plaintiff drew defendant Daniellians
attention, and requested that defendant Daniellian address the issues
as he said he would, to which, defendant Daniellian lied to the plaintiff
stating that the three motions to quash arrest had never been filed
or entered by attorney McKeigue, and that it was ' far too late ' at
that present time, during trial, to file.

On May 5th 2005, attorney McKeigue had filed on record and
the state had verbally acknowledged possession of three pre-trial motions
to quash arrest.

Defendant Daniellian had dismissed, expunged, or unfiled all three motions to quash arrest apart from Circut Court record and without the plaintiffs knowledge either before or after defendant Daniellian did so.

Defendant Daniellian also refused to investigate or acquire exculpatory evidence in the form of a confidential overhear, the Electronic Surveillance recording which defendant Minnear made upon the plaintiff while the plaintiff and Armstrong had been in the segregation unti of Illinois River.

To the best of the plaintiffs knowledge, this exculpatory evidence had been witheld by the state from the plaintiffs discovery, and the Electronic Surveillance operation involving the plaintiff became apparent to the plaintiff only when and after defendant Minnear testified to the execution of the Electronic Surveillance.

If information of the Electronic Surveillance had been tendered to the defense, defendant Daniellian did not reveal knowledge of its existance to the plaintiff, and had refused to investigate this evidence preemptively.

Notably, Defendant Minnear had testified before defendant Daniellian as plaintiffs counsel that the conversation where the plaintiff allegedly confessed to murder was recorded during the Electronic Surveillance executed in Illinois River segregation unit.

The plaintiff had immediately informed defendant Daniellian that

he, the plaintiff, had not confessed of any crime to inmate Armstrong and that the confidential overhear or Electronic Surveillance recording was exculpatory on plaintiffs behalf and would prove that the states witness, inmate Armstrong, was purjuring himself on behalf of the state.

The plaintiff also immediately requested that defendant Daniellian acquire the exculpatory Electronic Surveillance recording to refute the states witness, to which, defendant Daniellian angrily replied to the plaintiff that confidential overhear tape, or Electronic Surveillance recording ' no longer exists '.

The plaintiff then requested that defendant Daniellian formally and verbally request the confidential overhear, or Electronic Surveillance recording on Curcut Court record and defendant Daniellian refused to do so.

The plaintiff was then forced to address the missing confidential overhear, or Electronic Surveillance recording on record himself, with great ignorance of the law and no understanding of how he should word his concerns to acheive due process of the law.

The plaintiff did say on record before defendant Daniellian, however, that the Electronic Surveillance recording which had not been tendered was exculpatory on the plaintiffs behalf and that the plaintiff had requested that Electronic Surveillance recording.

The plaintiff was convicted and during the appeal procedure, defendant Daniellians muteness on the subject of the confidential overhear,

or Electronic Surveillance recording became the basis for the states
argument against the plaintiffs relief stating: " the people maintain
that the defendant forfeited review of this issue where defense counsel
failed to raise the issue at trial or in a post-trial motion, and even
if not forfeited, nothing in the record indicates that defendants counsel
did not receive all of the peoples evidence. "

Once recommitted to the prison to serve 75 years, the plaintiff
filed numerous grievances with the Illinois Department of Corrections
concerning the actions of defendant Curie, yet as the incidents happened
in 2002 and 2003, the Illinois Department of Corrections considers the
grievances not timely filed, and refuses to respond.

The plaintiff had no knowledge of operation in Illinois River
Correctional during 2002 and 2003 which was enacted by defendant Minnear
to gather evidence against the plaintiff, which did not become apparent
to the plaintiff until defendant Minnear testified to the Electronic
Surveillances execution at the plaintiffs trial for murder in June of
2006.

Defendant Minnear has used the DNA sample he acquired through
defendant Curie while the plaintiff was incarcerated in Illinois River
to plant DNA evidence against the plaintiff.

Inmate Tommie Armstrong was taken to the Grand Jury where he
knowingly, in regards to the states knowledge, testified falsely and
the state acquired an indictment against the plaintiff.

Armstrong then took the stand for the state at the plaintiffs criminal trial and knowingly testified falsely as to what was said by the plaintiff during the Electronic Surveillance recording by stating that the plaintiff had confessed to murder, after being compensated by the state for that fabrication of testimony.

* Exibit 15, 8-S / line 7 - 24

This Electronic Surveillance recording, which held exculpatory evidence disproving the states star witnesses Armstrong and defendant Minnear, was secreted and witheld before, through, and to the conclusion of the plaintiffs criminal trial and prosecution.

## VIOLATION OF DUE PROCESS

Defendant John Doe 4, the judge authorizing two seperate Electronic Surveillances upon the plaintiff in approximately 2003, has refused to issue Notice To Parties Overheard to the plaintiff, a person named in the surveillance order, or application for authorization.

The state has refused to tender or produce existing evidence of gratuities given to inmate Armstrong, which include choice job placement on Illinois Rivers' coveted inside grounds crew and later a choice transfer to a lesser locked-down facility, Longan Correctional, when or shortly before Illinois River increased the overall amount of time that inmates spent in their cells daily.

## V.    RELIEF

The plaintiff prays for relief through the court ordering that:

defendant John Doe 4, the judge authorizing the (two) confidential overhear(s) or Electronic Surveillance(s) upon the plaintiff issue Notice to Parties Overheard to the plaintiff immediately.

the state make all confidential overhears or Electronic Surveillance recordings involving the plaintiff available to the plaintiffs appelate attorney for immediate review.

the state send directly to the plaintiff a transcript of all confidential overhears or Electronic Surveillance recordings involving the plaintiff, to the plaintiff immediately.

the Federal Bureau of Investigations Civil Division and/or other appropriate divisions investigate and make known to the court and the plaintiff their findings as to all allegations stated within this complaint and all other unstated activities uncovered.

defendant Ward immediately forward to the plaintiff all papers, photos, evidence, and relevant information pertaining to the plaintiffs civil lawsuit in which defendant Ward was hired to represent the plaintiff.

The plaintiff further prays for relief through the court ruling that:

the actions of defendant Curie in having the plaintiff transfered to Illinois River for the purpose of having the plaintiff illegally interrogated by inmates as to matters beyond the jurisdiction and authority of the Illinois Department of Corrections, during which, the plaintiff was prejudiced from being housed in a facility according to his security level, and/or security level changes being implimented for inmates of the plaintiffs similiar status, constitutes cruel and unusual punishment, the federal tort of conspiracy against rights, and the state tort of official misconduct.

the actions of defendant Curie and defendant Minnear in failing to Mirandarize the plaintiff so that defendant Minnear could covertly interrogate and gather evidence against the plaintiff through a third party due to the plaintiff enacting his right to have legal representation present for questioning by defendant Minnear, wherein, the plaintiff was denied the right to have his Miranda rights told to him, and was consequentially denied the right to have legal representation present for questioning, which constitutes denial of due process and the state tort of official misconduct.

the actions of defendant Curie and defendant Minnear in interrogating the plaintiff through homosexual inmates who had no proper training to interrogate, wherein, during inmates quest to elicit information from the plaintiff, the plaintiff suffered prolonged and directed sexual harrassment and battery which constitutes cruel and unusual punishment, and the federal tort of conspiracy against rights, and the state tort of official misconduct.

the actions of defendant John Doe 1 in denying the plaintiff routine housing assignment to instead individually single the plaintiff out to be housed with two specific inmates on six seperate occassions, wherein, the plaintiff was denied fair and unbias housing, denied housing for inmates attending school, and denied housing according to all other general placement policies held by Illinois River for inmates of the plaintiffs similiar status, during which, the plaintiff six times suffered mental and psycological anguish at being repeatedly housed in new and dangerous enviorments unsuited to the plaintiffs true status and unalike the housing arrangements that unbias housing assignment would have rendered the plaintiff which constitutes cruel and unusual punishment, the federal tort of conspiracy against rights, and the state tort of stalking.

the actions of defendant Curie and defendant John Doe 1 in housing the plaintiff in the cell with the known homosexual inmate Douglas __ for the purpose of having the homosexual inmate become ' close ' to the plaintiff by any means necessary for befriendment of the plaintiff and obtainment of the plaintiffs confidence, which inmate Douglas __ did attempt to garner through sexual means causing the plaintiff prolonged mental and psycological anguish, which means were reasonably foreseeable to both defendant Curie and defendant John Doe 1, and which means were defendant Curie and defendant John Doe 1 expectation of the inmate as a sure method to gaining the plaintiffs confidence which constitutes cruel and unusual punishment, the federal tort of conspiracy against rights, and the state tort of sexual harrassment accountable to defendant Curie and defendant John Doe 1.

the actions of defendant Curie and defendant Joh Doe 1 in housing the plaintiff in the cell with the known homosexual inmate Douglas __ for the purpose of having the homosexual inmate become ' close ' to the plaintiff by any means necessary for befriendment of the plaintiff and obtainment of the plaintiffs confidence, which inmate Douglas __ did attempt to garner through sexual means, during which, the plaintiff was driven into confrontation with inmate Douglas __ as the plaintiff demanded personal space and solitude, neither given to the plaintiff because of inmate Douglas __ covert assignment, which constitutes cruel and unusual punishment, the federal tort of conspiracy against rights, and the state tort of battery accountable to defendant Curie and defendant John Doe 1.

the actions of defendant Curie and defendant John Doe 1 in housing the plaintiff in the cell with the known homosexual inmate Armstrong for the purpose of having the homosexual inmate become ' close ' to the plaintiff by any means necessary for befriendment of the plaintiff and obtainment of the plaintiffs confidence, which Armstrong did attempt to garner through sexual means causing the plaintiff prolonged mental and psycological anguish, which means were reasonably foreseeable to both defendant Curie and defendant John Doe 1, and which means were defendant Curie and defendant John Doe 1 expectation of Armstrong as a sure method to gaining the plaintiffs confidence which constitutes cruel and unusual punishment, the federal tort of conspiracy against rights, and the state tort of sexual harrassment accountable to defendant Curie and defendant John Doe 1.

the actions of defendant John Doe 2 in knowingly fabricating the report that the plaintiff was suspected fo running a gambling venue inside Illinois River and consequentially confining the plaintiff due to the statement of that report, which had been done for the purpose of forcing the plaintiff into inescapable seclusion in the segregation unit with the, until then, avoidable homosexual inmate Armstrong where an Electronic Surveillance operation being run by defendant Minnear was due to happen, constitutes a violation of due process, the federal tort of conspiracy against rights, cruel and unusual punishment, and the state tort of aggravated stalking.

the actions of defendant Curie, defendant Minnear, and defendant John Doe 2 in acquiring the plaintiffs DNA through fabrication of policy to test for disease transmittable through blood contact following a bloody fight between the plaintiff and inmate Douglas __, when Illinois River had no such policy, constitutes illegal search and seizure, and the state tort of theft by deception.

the actions of defendant Curie and defendant Minnear in acquiring the plaintiffs DNA through usuage of newly passed bill or law to acquire IDOC inmates DNA, which law or bill had not been activated throughout the Illinois Department of Corrections as of the time which the plaintiffs DNA was taken, and furthermore, in acquiring that DNA through the threat of violating the plaintiffs parole had the plaintiff resisted, constitutes illegal search and seizure, and the state tort of robbery.

the actions of defendant John Doe 3 in placing the plaintiff on Electronic
Home Monitoring detention when ' EMT ' was no a condition of parole
emplaced by the parole board, and where EMT illegally constrained the
plaintiffs liberty and freedom and prejudiced the plaintiffs ability
to return to career employment, which constitutes violation of due process,
illegal search and seizure, and the federal tort of conspiracy against
rights, and the state tort of false imprisonment.

the actions of defendant Minnear in arresting the plaintiff without
warrant, indictment, or probable cause to arrest constitutes illegal
search and seizure and the state tort of aggravated kidnapping.

the actions of defendant Minnear in not allowing the plaintiff
to contact his attorney or family when taken to the Riverdale Police
Department, nor allowing the plaintiff to call his attorney or family
within a reasonable time frame when transfered to the Homan Square Police
Department constitutes denial of due process.

the actions of defendant Minnear in having the plaintiff physically
attacked when sent to Cook County Jail constitutes the federal tort
of conspiracy against rights, and the state tort of battery accountable
to defendant Minnear.

the actions of Cook County Sherriffs in wrongfully sending the
plaintiff to the County Jail segregation unit so that the plaintiff
would be seperated from other inmates who might aid the plaintiff when
sherriffs eventually attacked the plaintiff due to police requested
retailiation constitutes violation of due process and the federal tort
of conspiracy against rights.

the actions of Cook County Sherriffs in punching, kicking, and stomping the plaintiff, during which, the plaintiff suffered full body trama, as well as broken bones and physical and mental anguish, which was done maliciously and without need or provocation, but in response to police requested retailiation, which constitutes cruel and unusual punishment, the federal tort of conspiracy against rights, and the state tort of battery.

the actions of Cook County Sherriffs in denying the plaintiff medical attention and treatment for over five hours while the plaintiff knowingly bled profusely from open wounds and blunt force trama, afterwhich, county doctors deemed the plaintiffs condition dire enough to require Emergency Transfer to Stroger hospital, did so maliciously for the purpose of subjecting the plaintiff to prolonged physical and mental anguish, which constitutes deliberate indifference and the state tort of negligence.

the action fo defendant Ward in dismissing the plaintiffs civil lawsuit against Cook County Jail despite the plaintiffs explicit demands to not do so, but solely to be in agreement with party hereto unknown by the plaintiff constitutes denial and deprivation of due process, the federal tort of conspiracy against rights, and the state tort of fraud.

the actions of defendant Ward in failing to execute the proper legal actions needed for the plaintiff to prosecute civil lawsuit and in not doing so, causing the plaintiff to suffer a lost of property, the lawsuit, due to defendant Wards intention to preclude the plaintiff from refiling pro-se which constitutes legal malpractice, and the state tort of negligence.

the actions of defendant Daniellian in purposely misinforming the plaintiff that pre-trial motions to quash arrest needed to not be litigated before trial, but could be litigated at defendant Daniellians discretion during trial, was maliciously done to confuse the plaintiff as to how and when the plaintiff could defend himself and was maliciously done to ultimately thwart the plaintiffs defense of state allegations stemming from illegal actions taken by police officers which constitutes denial of due process, and the federatl tort of legal malpractice.

the actions of defendant Daniellian in knowingly and purposely misinforming the plaintiff that three motions to quash arrest had never been filed by plaintiffs previous attorney when the plaintiffs previous attorney, McKeigue, had on May 5th 2005 filed three motions to quash arrest, which was done maliciously by defendant Daniellian for the purpose of obscuring the fact that defendant Daniellian had not timely litigated motions to quash arrest, and that motions to quash arrest were no longer filed which was done to the plaintiffs legal detriment, constitutes denial and deprivation of due process, and the federal tort of legal malpractice.

the actions of defendant Daniellian in informally and secretly dismissing, expunging, or unfiling three motions to quash arrest apart from the Circut Courts official record constitutes denial and deprivation of due process, and the federal tort of legal malpractice.

the actions of defendant Daniellian in refusing to acknowledge
or request on Circut Court record an exculpatory Electronic Surveillance
recording witheld by prosecutors, which witheld evidence defendant Daniellian
did know of prior to the plaintiff addressing witheld evidence on Circut
Court record and where defendant Daniellian knew of witheld evidence
following the plaintiffs on record statement in defendant Daniellians
presence, whereafter, defendant Daniellian refused and failed to take
proper legal action in addressing untendered evidence on Circut Court
record, which was done to the plaintiffs legal detriment and constitutes
denial and deprivation of due process, and the federal tort of legal
malpractice.


the actions of defendant Daniellian in refusing to acquire an exculpatory
Electronic Surveillance recording witheld by prosecutors, which witheld
evidence defendant Daniellian did know of prior to the plaintiff addressing
witheld evidence on Circut Court record and where defendant Daniellian
knew of witheld evidence following the plaintiffs on record statement
in defendant Daniellians presence, whereafter, defendant Daniellian
refused and failed to take proper legal action in acquiring untendered
evidence, which was done to the plaintiffs legal detriment and constitutes
denial and deprivation of due process, and constitutes the federal tort
of legal malpractice.

the actions of defendant John Doe 4, the judge authorizing the Electronic
Surveillance upon the plaintiff pursuant to defendant Minnears application,
in witholding Notice to Parties Overheard from the plaintiff in a concerted
effort with prosecutors for the plaintiff to not have knowledge of intergral
Electronic Surveillance recording prior to the plaintiffs criminal prosecution
by state, during which prosecution, the plaintiff would have prior opportunity
to obtain, study, and prepare exculpatory evidence from that recording
to refute testimony by states witnesses Armstrong and defendant Minnear,
which purjured testimony defendant John Doe 4 knew was forthcoming in
states prosecution of the plaintiff which constitutes denial of due
process and the federal tort of conspiracy against rights.

all the defendants undertook undisputed actions in disregard of
the plaintiffs civil, federal and state given rights, and did so maliciously
to inflict mental, emotional, physical, and psycological distress upon
the plaintiff, and did inflict those torts upon the plaintiff.

The plaintiff lastly asks that the court award pain and suffering to the plaintiff
in the following amounts of:

$ 1,000,000 each to defendants Micheal Minnear, Brad Curie, Anderson
Ward, Jason Daniellian, and John Does 1, 2, and 3 in their individual
capacities.

$ 20,000,000 to defendant John Doe 4 in his individual and official
capacity.

$ 20,000,000 to defendant Micheal Sheahan in his official capacity.

VI.   The plaintiff demands that the case be tried by a jury: YES.

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint
are true to the best of my knowledge, information and belief. I understand
that if this certification is not correct, I may be subject to sanctions by
the Court.

Signed this 5th day of May, 2008

_Emry Ellison_

_K 81210_

_P.O. Box 711, Menard Ill 62259-0711_

PRISONER CORRESPONDENCE FORM

      Please fill out and return this form along with any other pleading you wish to submit to the court. It is your responsibility to keep the court advised of your current address in order for you to receive orders from the court. Failure to do so may result in dismissal of your case for want of prosecution. Once the Prisoner Correspondent records this information, this form will be destroyed.

## PLEASE PRINT

1.    Name:

      Gary          Frederick        Ellison

      (First)            (Middle)          (Last)

      List Alias Names, if any:   None


2.    Any Current/Prior
      Prison ID Number(s):   K81210

      Name of Prison(s):   Menard Correctional

3.    Jail ID Number(s):   —

      Name of Jail(s):   —

4.    Date of Birth:   5/14/80

5.    Home Address (Do not use P.O. Box):

      Street Name and Number:   13824 S Wabash

      City, State and Zip Code:   Riverdale IL 60827

1          A     I contacted Brad Curie, who was the

2     director of intelligence for the Department of

3     Corrections and informed him that I had a

4     suspect in a prison in Illinois and was seeking

5     to get some information.

6          Q     And in your conversation with Brad

7     Curie of the Illinois Department of Corrections,

8     did you share with him any of the facts of this

9     particular case?

10         A     No.

11         Q     And as a result of talking to Brad

12    Curie, did you get any correspondence or reports

13    from the Illinois Department of Corrections

14    relevant to this case?

15         A     Yes, when I talked to Brad Curie, I had

16    asked him if he had any informants working in

17    the prison system who could try to get some

18    information from the defendant.  He asked me

19    What prison I was looking at.  I informed him

20    that I was looking at Illinois River

21    Correctional Center.  He told me that he used to

22    be the captain at Illinois River and had a very

23    reliable informant working for him there.

24         Q     And so what happened?

1      A      He asked me the inmate's name that I
2    was seeking and that that's all the information
3    that he needed.  He would just go to his
4    informant and tell the informant to just start
5    talking with the defendant.

6      Q      And was any other information other
7    than the defendant's name and where he was
8    incarcerated at provided to the Illinois
9    Department of Corrections?

10     A      No.

11     Q      And was --

12            Did you get any type of
13    correspondence back about anything that occurred
14    in the Illinois Department of Corrections?

15     A      Yes.

16     Q      And what was that?

17     A      I received a report written by an
18    intelligence officer at Illinois Department of
19    Corrections detailing an interview that he had
20    with the informant that was working for Brad
21    Curie.

22     Q      And not going into what he had said,
23    but based upon that information, was a
24    consensual overhear obtained for an -- for an

Where was consensual overhear?

R-127

1    overhear between that defendant and the

2    informant?

3         A    Yes.

4         Q    And approximately what time in your

5    investigation is this now?

6         A    The very late stages of the

7    investigation.

8         Q    And is this in July or August of 2003?

9         A    Yes.

10        Q    And at this same time that you obtained

11   the C.O.H., what other steps are you taking into

12   regards to memorializing some of the witnesses

13   that you have testified to in this

14   investigation?

15        A    I was bringing several witnesses to the

16   Cook County State's Attorney's Office for them

17   to present grand jury testimony.

18        Q    Okay.  Who ended up testifying in front

19   of the grand jury?

20        A    The defendant's mother.

21             MR. DANIELIAN:  Judge, I am going to

22   object.

23             THE COURT:  Sustained.

24             MR. DANIELIAN:  And I am going to ask

















The Law Offices of:

# ANDERSON J. WARD, PC

21470 MAIN STREET, SUITE 201
MATTESON, ILLINOIS 60443-3715
TEL (708) 747-7445 • FAX (708) 747-7504
Web: www.ajwardlaw.com

January 8, 2007

Gary Ellison
IDOC #K81210
Menard Correctional Institution
711 Kaskaskia Street
P.O. Box 711
Menard, Il 62259

Re:    Gary Ellison v. Michael F. Sheahan et al.
       Case No. 05 C 6236

Dear Mr. Ellison:

Pursuant to our conversation via the telephone today, it is with the deepest regret that I notify you in writing that we will be asking the court for a voluntary dismissal of your case. As I stated to you over the phone after a review of discovery received, statements and conversation that we have had concerning the incident, we have concluded that there would be a limited possibility of recovery based upon the complaint filed.

In order to prevail in a case of personal injury and violations of your civil rights, we would have to convince a judge or jury by a preponderance of evidence that the named defendants in your case acted without probable cause when they caused you physical injury. In reviewing the statements of the defendants, all the correction's officers allege that you were acting violently, aggressively and refusing to follow orders and directions. Although you offer a completely different version of the incident, the burden of proof rest upon you. Unfortunately, your credibility is substantially limited due to evidence of your negative behavior, documented by records tendered to our office. In addition there are no witnesses that we know of that would support your version of the incident. Unfortunately, in this case there is evidence and a lack of evidence that would substantially limit the amount that may be recovered. Conversely, the amount of time and effort would be considerable.

Your case is scheduled for a trial to begin on January 29, 2007 at 9:00 a.m. Because of your current conviction and the limited amount of evidence and witnesses that may be presented, we believe that there would be a finding entered against you at this time. Therefore we will be voluntarily dismissing your complaint as you agreed too in our telephone conversation. If you wish to reinstate your case, you have thirty days (30) from the date your case is dismissed to do so. At your request we will forward to you copies of all pleadings, responses and documents related to your case.

Please do not hesitate to contact our office if you have further questions.

Sincerely,

ANDERSON J. WARD, P.C.

Letheal N. Johnson

ONE NORTHFIELD PLAZA
SUITE 300
NORTHFIELD
ILLINOIS 60093-1214

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.0
### Eastern Division

Gary Ellison

      Plaintiff,

v.

               Case No.: 1:05−cv−06236
               Honorable David H. Coar

County Of Cook, et al.

       Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, February 26, 2007:

  MINUTE entry before Judge David H. Coar : Motion hearing held on 2/26/2007 regarding motion for miscellaneous relief[32].For the reasons stated on the record, The MOTION [32] by Plaintiff Gary Ellison for objection to voluntary dismissal is denied. Mailed notice(pm, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

Mr. Ellison:
The Judge indicated on the record that the matter of the dismissal is something you should takeup with the lawyer you hired

In the United States District Court
for the Northern District of Illinois

Gary Ellison, Plaintiff                    Case Number 05 C 6236
       vs.                              The Honorable Judge
Michael Sheahan, et al., Respondent

Motion for Objection to
Voluntary Dismissal

Now comes the Petitioner, Gary Ellison, represented by Anderson J Ward, PC,
requesting that this Honorable court disregard or deny the Motion for Voluntary
Dismissal in Gary Ellison vs Michael Sheahan et al., Case Number 05 C 6236,
and further requesting of this Honorable court to disregard or deny any motion
to postpone or dismiss in any capacity, the aforementioned case. In support
of this motion, the following is respectfully submitted:

1 During telephone conversation, Gary Ellison, the plaintiff, disagreed to
  any form of dismissal, and explicitly expressed his will to proceed with
  Gary Ellison vs Michael Sheahan et al., Case Number 05 C 6236.

2 Gary Ellison asked to be informed of all options available and was repeatedly
  told by Letheal N Johnson, attorney for Anderson J Ward, PC, that voluntary
  dismissal was the only option available.

3 Gary Ellison requested that Anderson J Ward, PC, relinquish handling of
  Gary Ellison vs Michael Sheahan et al., and was told that option was impossible.

4 Gary Ellison requested that a Motion for Appointment of Counsel be entered,
  and was told that option was impossible.

5 Anderson J Ward, PC, aleges that there are no witnesses that he knows
  of when both Gary Ellison and Felecia Price informed him of each:
    Shawn Rose, on behalf of the plaintiff;
    Paul Washington, on behalf of the plaintiff;
    and Enrique Cervansis, on behalf of the plaintiff.

1        MR. DANIELIAN:  I'll object to the answer as

2    being non-responsive.  It's not a statement he is

3    testifying to.

4        THE COURT:  That's not your objection, but the

5    objection will be overruled.

6             Your next question, please.

7    BY MS. MORELAND:

8        Q.  During your conversations with the defendant,

9    did he say he committed a murder?

10       A.  Yes.

11           MR. DANIELIAN:  Objection.

12           THE COURT:  Sustained.  Rephrase.

13           MS. MORELAND:  All right.

14           THE COURT:  Please don't lead.

15   BY MS. MORELAND:

16       Q.  During these conversations, he talked to you

17   about a murder; is that true?

18       A.  Yes.

19       Q.  Okay.  Did he say when this murder happened?

20       A.  He just told me it happened in like 2001

21   sometime.

22       Q.  Did he say where it happened?

23       A.  He said it was supposed to happen in the area

24   of his mom house, around his mom around Riverdale or