**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GARY FREDERICK ELLISON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No.:  08-CV-3247 |
| v. | ) | JUDGE LEINENWEBER |
| | ) | |
| MICHAEL MINNEAR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION TO WITHDRAW AS COUNSEL**
**FOR PLAINTIFF, GARY FREDERICK ELLISON**

Court-appointed counsel for Plaintiff, GARY FREDERICK ELLISON, James M. Lydon,

and the law firm of HINSHAW & CULBERTSON LLP, request this Court for an order granting

this Motion to Withdraw as Counsel for GARY FREDERICK ELLISON, and state in support as

follows.

1.      The undersigned is a partner with the law firm of HINSHAW & CULBERTSON

LLP and was appointed as counsel for Plaintiff, GARY FREDERICK ELLISON.

2.      Plaintiff has bought a § 1983 civil rights action against numerous parties,

including an Illinois State Police investigator, the Director of the Illinois Department of

Corrections and the former Sheriff of Cook County.  Many of plaintiff's claims were dismissed

by the Court, with the undersigned counsel directed to evaluate an amended complaint.

3.      HINSHAW & CULBERTSON LLP represents the State of Illinois in various

matters, including *Canel v. Topinka, et al.* (Court No. 00 CH 13279/Circuit Ct. of Cook County),

a class action against the Treasurer of the State of Illinois.  (Complaint attached as Exhibit A).  In

this lawsuit, attorneys with HINSHAW & CULBERTSON LLP have been appointed as Special

Assistant Attorney Generals.

4.    The Illinois Attorney General's Office has previously determined that a conflict exists for HINSHAW & CULBERTSON LLP to represent clients that are adverse to any state agency of the Illinois government.

5.    Additionally, HINSHAW & CULBERTSON LLP has previously represented and currently represents the Cook County Sheriff's Office, including former Cook County Sheriff Michael Sheahan, Cook County Sheriff Thomas Dart and other Cook County Sheriff's employees, on numerous matters over a period of many years.  Many of the former matters were § 1983 excessive force claims, substantially related to the excessive force allegations of plaintiff while at Cook County Jail.

6.    Also, HINSHAW & CULBERTSON LLP presently represents Sheriff Dart and ten Sheriff's officers in a pending § 1983 excessive force lawsuit, *Donahue, et al. v. Cook County, et al.* (Court No. 07 c 4534/N.D. Ill.).  This matter is substantially related to the excessive force allegations of plaintiff while at Cook County Jail.  (Complaint attached as Exhibit B).

7.    Rule 1.7 of the Illinois Rules of Professional Conduct and Local Rule 83.51.7 of the Northern District of Illinois prohibit attorneys from representing clients whose interests are adverse to another.  Also, Local Rule 83.51.9 of the Northern District of Illinois prohibits an attorney, who has formerly represented a client, from representing other clients in substantially related matters adverse to the client.

8.    Based on the allegations of the Complaint and the Court's order regarding same, our representation of Plaintiff, GARY FREDERICK ELLISON, would involve 1) an investigation of the conduct of our own clients, while possessing knowledge of internal information acquired in confidence; 2) an evaluation of the rights of Plaintiff, GARY

2

FREDERICK ELLISON, versus our own clients; and 3) potentially filing a lawsuit, on behalf of

Plaintiff, GARY FREDERICK ELLISON, against our own clients, which would require, *inter*

*alia*, the issuance of subpoenas for records from our clients and the interrogation of our clients in

depositions.  In sum, representation of Plaintiff, GARY FREDERICK ELLISON, would require

actions adverse to existing clients which is prohibited by Illinois Rules of Professional Conduct

and the Local Rules of the Northern District of Illinois.

WHEREFORE, Court-appointed counsel for Plaintiff, GARY FREDERICK ELLISON,

James M. Lydon, and the law firm of HINSHAW & CULBERTSON LLP, respectfully request

this Court for an order granting this Motion to Withdraw as Counsel for GARY FREDERICK

ELLISON, pursuant to Local Rule 83.38(a)(1).


Respectfully submitted,

HINSHAW & CULBERTSON LLP


By:  s/James M. Lydon

James M. Lydon, Esq. – Atty. Bar No.: 06211191
HINSHAW & CULBERTSON LLP
222 N. LaSalle
Suite 300
Chicago, IL 60601
Tel. 312-704-3561
Firm No.: 90384

3

# EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

JAMES H. CANEL and DAVID L. CWIK as )
Administrator, individually and on behalf of a )
class of all others similarly situated, )
                          )
                  Plaintiffs, )       No. 00 CH 13279
                          )
       v.                     )
                          )       JURY TRIAL DEMANDED
JUDY BAAR TOPINKA, Treasurer of the State )
of Illinois, and MITCHELL MURDOCK, )
Director, Unclaimed Property Division, Office of )
the Treasurer of the State of Illinois, )
                          )
                  Defendants. )

## CLASS ACTION COMPLAINT AND AMENDMENTS

Plaintiff James H. Canel, for his class action complaint against defendants Judy Baar

Topinka, Treasurer of the State of Illinois, and Mitchell Murdock, Director of the Unclaimed

Property Division of the Office of the Treasurer of the State of Illinois (collectively "defendants"),

states and alleges as follows:

## INTRODUCTION

1.      This is an action for violation of Article I, §15 of the Constitution of the State of

Illinois, as well as 42 U.S.C. §1983 for violation of the Fifth and Fourteenth Amendments to the

United States Constitution, and concerns the defendants' unlawful confiscation of dividends, interest

and other accruals (collectively "earnings") earned on private property while it is held in custody for

its owners by the State of Illinois pursuant to the Illinois Uniform Disposition of Unclaimed Property

Act, 765 ILCS 1025/1 *et seq.* (the "Illinois Act" or "Act"). Pursuant to the Act, private property in

the possession of a person other than its owner and deemed "abandoned" under the Act must be

remitted into the defendants' custody, at which point the earnings on such private property are used

to fund a variety of State programs and operations having no relation to the property or its earnings.

The defendants' failure to return the earnings thereon to the owner of the property is a taking of

private property without just compensation in violation of the Constitutions of the State of Illinois

and the United States. In this lawsuit, Plaintiff seeks on his own behalf and on behalf of the Class

defined herein a declaration that the Act, in prohibiting the return of most earnings on private

property held in custody by the State, and the defendants' policy and practice of always retaining the

earnings, is unlawful. Plaintiff also seeks recovery of Plaintiffs' and the Class's private property

wrongfully taken, together with injunctive relief to prevent further violations of the Plaintiffs' and

the Class's constitutional rights and an accounting to determine the persons and/or entities to whom

defendants have failed to remit earnings along with the return of principal upon a valid claim.

  2.  Plaintiff brings this action on his own behalf and on behalf of the following Class:

> All persons or entities whose property has been taken
> into custody by the State of Illinois pursuant to the
> Illinois Uniform Disposition of Unclaimed Property
> Act (or its predecessor acts) and which has earned or
> will earn interest, dividends or other accruals while in
> the custody of the State which interest, dividends or
> other accruals have been or will be used for the
> purposes of funding state programs and operations
> without compensation being paid to the person or
> entity whose property was or will be used to earn such
> interest, dividends or accruals.

### PARTIES

  3.  Plaintiff James H. Canel is an individual and is and has at all times relevant been a

resident of the State of Illinois.

3A.    Plaintiff David L. Cwik is an individual and is and has at all times relevant been a resident of the State of Illinois.  On November 29, 2004 Cwik was appointed as Successor Independent Administrator of the Estate of Genowefa Bogdanowicz and asserts this cause of action on behalf of that Estate.

4.    Defendant Judy Baar Topinka is the Treasurer of the State of Illinois.  In that position, since July 1, 1999 and pursuant to §.05 of the Act, 765 ILCS 1025/.05, defendant has been and is charged with supervising and administering, and has supervised and administered, the Unclaimed Property Division of the Office of the Illinois Treasurer.

5.    Defendant Mitchell Murdock is the Director of the Unclaimed Property Division of the Office of the Treasurer of the State of Illinois.  Until July 1, 1999, defendant was the Director of the Unclaimed Property Division as part of the Illinois Department of Financial Institutions.  In those positions, Murdock was and is charged with administering, and has administered, the Unclaimed Property Division, including disposition of all property that is remitted to the Division and payment of all approved claims for return of such property.

## FACTS

### The Act and its Operation

6.    In 1954, the National Conference of Commissioners of Uniform State Laws approved the original version of the Uniform Disposition of Unclaimed Property Act ("1954 Act").  The 1954 Act was revised in 1966.

7.    Illinois adopted the 1954 Act in 1961.  The Illinois Act was amended in 1975 to conform substantially to the 1966 revisions.

3

8.     The Illinois Act provides that all tangible and intangible property held for its owner by another and deemed abandoned under the Act must be delivered to the Director of the Unclaimed Property Division of the Office of the Treasurer of the State of Illinois. The Act defines property as abandoned if it is in the custody of a third party, and has been unclaimed for a statutorily-prescribed period, five years for private holders and seven years for government holders.

9.     The Act requires that all non-monetary abandoned property delivered to the State pursuant to the Act, with certain exceptions, "be sold within a reasonable time to the highest bidder." Pending liquidation, any earnings on the property, such as dividends on securities, are to be received by defendants.

10.     Section 1025/18 of the Act directs the State Treasurer to deposit all funds received pursuant to the Act, including funds from the liquidation of property, into the State Pension Fund, except that an amount not exceeding $2,500,000 is to be retained by the State Treasurer to ensure prompt payment of approved claims filed by the owners of abandoned property. In addition, the Treasurer is also authorized to deduct from such funds to be delivered:

      a.     any costs incurred in connection with the liquidation of abandoned property;

      b.     any costs of mailing and publication in connection with any abandoned property; and

      c.     any costs incurred in connection with the maintenance of records or disposition of claims made pursuant to the Act.

11.     Pursuant to Section 105/8.12 of the State Finance Act, 30 ILCS 105/8.12, all monies held in the State Pension Fund are to be used for the administration of the Act and for partial payment of the State's required contributions to designated State employee retirement systems.

4

Section 105/8.12 further provides that each year the General Assembly is to appropriate the balance in the State Pension Fund, minus $5 million, to the various State pension systems.

12. Property remitted to the defendants and the State pursuant to the Act earns interest, dividends or other accruals, and/or is held in interest-bearing accounts or instruments, and such interest, dividends and other accruals is used by the State Pensions Fund and the Treasurer to fund their operations and programs.

13. Unlike an escheat statute, in which actual title to abandoned property may eventually vest in the State after certain procedures are followed, the Act is purely custodial in nature, and title to abandoned property is never transferred from the owner to the State of Illinois. Thus, title and ownership at all times remain with the original owner of the property. As stated in the Prefatory Note to the Uniform Disposition of Unclaimed Property Act (Rev. 1966 Act), which, with amendment, was adopted by the State of Illinois and forms the basis of the current Act:

> The Uniform Act is custodial in nature - that is to say, it does not result in the loss of the owner's property rights. The state takes custody and remains the custodian in perpetuity. . . . In this respect the measure differs from the escheat type of statute, pursuant to which the right of the owner is foreclosed and title to the property passes to the state.

14. The Annual Reports of the Illinois Department of Financial Institutions ("IDFI"), which until July 1, 1999 was responsible for administration of the Act, similarly provide that a property owner is not stripped of his, her or its interest in the property when it is delivered to the State for custody. For example, the IDFI's 1998 Annual Report states:

> The Illinois unclaimed property statute is "custodial" in nature. This means that an owner or heir can always claim funds that were remitted to the Division. This differs from an "escheat state" in

5

> which, after a mandated period, funds remitted to the state become
> the state's property and can no longer be claimed by an individual.
> All unclaimed assets remitted to this state are held in perpetual
> custody until the rightful owner or their heirs claim them.

A similar statement appears in the IDFI's 1997 Annual Report.

15.    At all times, prior to liquidation and after, property declared abandoned under the Act

and held in custody by the State remained, and remains, the private property of its owner, and is not

the property of the State. *See, Commonwealth Edison Co. v. Vega*, 174 F.3d 870 (7th Cir. 1999), *cert.*

*denied,* ____ U.S. ____, 120 S. Ct. 176, 145 L.Ed 2d 149(Act is not an escheat statute, and the State

does not acquire title to the abandoned property but is merely custodian, and owner can reclaim

property at any time).

16.    In *Morton Grove Park District v. American National Bank and Trust Company*, 78

Ill.2d 353, 362, 399 N.E.2d 1295, 1299, 35 Ill.Dec. 767, 771 (1980) ("*Morton Grove*"), the Illinois

Supreme Court defined "property":

> The word "property" as employed in the taking clause of the Federal
> and Illinois constitutions includes every interest anyone may have in
> any and everything which is the subject of ownership, together with
> the right to possess, use, enjoy and dispose of the same.

A copy of the *Morton Grove* opinion is attached hereto as Exhibit A.

17.    The Illinois Supreme Court has recognized the general rule that "interest follows

principal", holding in *Morton Grove*, 78 Ill.2d at 362-63, 399 N.E.2d at 1299, 35 Ill.Dec. at 771, that:

> The earnings on the funds deposited are a mere incident of ownership
> of the fund itself. The "taking clause" provision [of the United States
> and Illinois Constitutions] applies to the earnings in the same manner,
> and with the same force, as it applies to the principal.

18. In *Morton Grove*, the Illinois Supreme Court held that money awarded to an owner of real property in a condemnation proceeding while the money is in possession of the county treasurer pending resolution of a property owner's appeal, is itself private property, and "[t]he use of the award money by the county treasurer, to earn interest which is not paid to the owner but to the county, is clearly a taking of private property for public use." *Id.*, 78 Ill.2d at 362, 399 N.E.2d at 1299, 35 Ill.Dec. at 771.

19. As a result, the Illinois Supreme Court held:

> In our case the money that was deposited with the county treasurer belonged to the condemnees and at no time did the county have a legitimate claim to it or any interest in it.
>
> [¶] We hold that [the property owners] are entitled to be reimbursed for the full amount of money which has been earned on the sum deposited with the county treasurer pursuant to the order of the Circuit Court of Cook County.

*Id.*, 78 Ill.2d at 365, 399 N.E.2d at 1300, 35 Ill.Dec. at 772.

20. The United States Supreme Court has also held that retention of interest earned on private funds held by a government agency is a taking in violation of the Fifth Amendment to the United States Constitution. In *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162, 66 L.Ed.2d 358, 367 101 S.Ct. 446, 451 (1980) ("*Webb's*"), the United States Supreme Court, finding unconstitutional a Florida statute which allowed a county clerk to retain interest earned on interpleader funds, stated:

> [A] State, by *ipse dixit*, may not transform private property into public property without compensation, even for the limited duration of the deposit in court. This is the very kind of thing that the taking Clause of the Fifth Amendment was meant to prevent. That Clause stands as a shield against the arbitrary use of governmental power.

7

In *Webb's*, the Supreme Court held that all interest earned on the interpleader funds belonged not to the government but to the owners of the funds, and must be returned to them. A copy of the *Webb's* opinion is attached hereto as Exhibit B.

21.     In keeping with the fact that abandoned property remains the private property of the owner, the Act provides that an owner of property remitted to the State as custodian under the Act can make a claim at any time, and upon approval, and after deducting an amount to cover the cost of notice publication and related clerical expenses, the State Treasurer is to "make payment forthwith" to the property's owner. *See,* 765 ILCS 1025/20(b).

22.     Despite the custodial nature of the Act, however, the Act provides that except for income on certain securities, the return of which is discretionary, a property owner will not be given the income earned on their private property when it is returned. Instead, the Act provides that the State may retain all interest, dividends and other accruals earned on abandoned property during the period it is held by the State. Section 15 of the Act provides:

> When property is paid or delivered to the State Treasurer [formerly the Director] under this Act, the owner is not entitled to receive income or other increments accruing thereafter, except that income accruing on unliquidated stock and mutual funds after July 1, 1993 may be paid to the owner.

23.     The Treasurer, and previously the Director, has final authority under the Act to decide whether or not to return "income or other increments accruing" on stocks or mutual funds held pursuant to the Act. Although discretionary under the Act, on information and belief, it is the policy and practice of the Treasurer, as was the Director's, not to return to the property owner any income or other increments which have accrued after July 1, 1993 on securities held in custody pursuant to

8

the Act, and, upon information and belief, in no case has such income or other increments ever been returned to the owner. Conversations with Rick Blockyou of the Office of the State Treasurer of Illinois by plaintiff and counsel for plaintiff form the basis of the allegations in this paragraph.

24. By authorizing the State to retain earnings and other accruals on abandoned property, and authorizing the Director to decide not to return "income on unliquidated stock and mutual funds", and by the Director not remitting them to persons claiming formerly unclaimed property as alleged previously, the State and the defendants have unlawfully appropriated to the State both the interest and other accruals on such private property, as well as any income on the property for the period during which such property is held.

25. The net result of these practices is that: (a) certain income received on the property pending liquidation, such as dividends or other accruals, and (b) any interest or other income received on funds is taken for State use without compensation.

26. According to the IDFI's 1998 Annual Report, during fiscal year 1998, which ended on June 30, 1998, remittance of abandoned property to the State totaled over $123 million, owned by more than 300,000 property owners, and claims in the amount of approximately $27 million were paid to 22,822 claimants. Since 1961 through June 30, 1998, over $909 million has been remitted, and over $179 million in property has been returned to 161,896 owners. Currently, the State holds custody to more than $700 million in principal amount of unclaimed property plus the interest and earnings on it.

9

**Plaintiffs' Property**

27.     In or about February, 1981, plaintiff became the owner of 80 shares of Patrick Industries, Inc. ("Patrick"). Through a series of stock splits, by 1994, plaintiffs' stake had increased to 288 shares. The shares were held by Harris Bank.

28.     Harris Bank delivered plaintiff's shares to the State of Illinois in December, 1998 as abandoned property pursuant to the Act. Plaintiff learned of this in January of 1999.

29.     On or about April 9, 1999, plaintiff submitted a claim to the Unclaimed Property Division for return of his shares. He was subsequently instructed to complete a prescribed form, and on or about August 31, 1999, that form was filed. In his claim, plaintiff asked for the return of his shares of Patrick and any dividends or other accruals that had been issued for such stock from the time it had been delivered by Harris Bank to the State of Illinois. He knew there were such dividends since Harris Bank had sent him an IRS Form 1099 revealing them.

30.     After submitting the appropriate claim form, plaintiff spoke with Mr. Blockyou, who informed plaintiff that while his shares would be returned, he would not receive the dividends that had been distributed on the stock during the period it was held in custody by the State of Illinois.

31.     Upon further inquiry, Mr. Blockyou stated that although §15 of the Act provides that the Treasurer *may* return interest and dividends on stock held pursuant to the Act, it was the Treasurer's policy and practice not to return these accruals to the owner of securities.

32.     Pursuant to §15 of the Act and the Director's policy and practice, plaintiff received in return only 200 of his 288 shares of Patrick stock, but has neither been paid the dividends which accrued on his shares while they were in the custody of the State of Illinois, nor has he received the

10

additional 88 shares. Although plaintiff understands why the dividends have not been returned (though he disagrees with the reasons) he has no idea why the defendants kept the 88 shares.

32A. In or about December, 1995, money belonging to the Estate of Genowefa Bogdanowicz was deposited with the Treasurer as unclaimed property. Defendants accrued earnings on the Estate's property while it was in their custody and control.

32B. In or about June, 2000, pursuant to a claim submitted, the Unclaimed Property Division of the Treasurer's Office returned the sum of $45,555.11 to the Administrator of the Estate of Genowefa Bogdanowicz. That amount represented only the principal sum that had been deposited with defendants as unclaimed property, and did not include any of the interest or other earnings that had accrued on that principal amount while defendants held it in custody pursuant to the Act.

## CLASS ACTION ALLEGATIONS

33. Plaintiffs bring this action as a class action pursuant to §2-801 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, on behalf of the Class.

34. Plaintiffs are unable to determine the exact number of individuals and entities which comprise the Class since this information is solely within the possession and control of the defendant. However, as noted above, currently more than 300,000 persons or entities own private property deemed abandoned and held in custody by the State of Illinois under the Act. More than 22,000 claims were paid in fiscal 1998 alone, and more than 161,000 claims have been paid since the inception of the Act. Based upon the sums currently held by the State pursuant to the Act, $800 million, and the number of persons or entities whose property is currently held by the State, the average amount of each claim is approximately $2,700 and the earnings on each such claim will be

11

smaller still. Therefore, most, if not all Class members, have claims that are too small to warrant an individual action. Thus, the Class is sufficiently numerous to make joinder of all Class members impossible.

35.     Common questions of law or fact exist, and include but are not limited to, the following:

      a.     whether interest, dividends and other accruals earned on property held in custody by the defendants is private property;

      b.     whether §15 of the Act, and the defendants' policy and/or practice of retaining dividends, interest and other accruals earned on private property while in defendants' custody pursuant to the Act, violate Article I, §15 of the Illinois Constitution and/or the Fifth and Fourteenth Amendments to the United States Constitution; and

      c.     what constitutes a proper remedy for the taking of such private property.

Conversely, the only individual questions affecting Class members is the precise amount of each Class Member's private property wrongfully withheld by defendants. Thus, these common questions predominate over any questions affecting only individual members.

36.     Plaintiffs' claims are typical of those of other Class members in that his private property was remitted to the State of Illinois pursuant to the Act, and upon return of his property he did not receive the earnings which had accrued on his property while in the possession of the State.

37.     Plaintiff and his counsel will fairly and adequately protect the interests of the Class. The interests of the Class representative are consistent with those of the Class, and he has no interests antagonistic to the Class. Plaintiff is represented by experienced and able counsel whose firms have successfully represented plaintiff classes in complex matters throughout the United States in both federal and state courts.

12

38.    This class action is an appropriate method for the fair and efficient adjudication of the claims asserted herein. Repetitive individual litigation would pose an unnecessary burden on Class members and the court system. This class action is not expected to present any significant management difficulties and focuses, by definition, on the uniform and consistent actions of the defendants. The prosecution of separate actions would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the defendants.

## COUNT I

## (ON BEHALF OF PLAINTIFFS AND THE CLASS)

39.    Plaintiffs reallege all preceding paragraphs as if fully set forth here.

40.    Article I, §15 of the Constitution of the State of Illinois provides:

> private property shall not be taken or damaged for public use, without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law.

41.    The interest, dividends and other accruals earned on private property owned by plaintiffs and the Class while in the defendants' custody pursuant to the Act is itself private property.

42.    The Act and the defendants' policy and practice of not returning dividends, interest and accruals provide a windfall to the State and place upon property owners whose private property has been taken into custody by the defendants pursuant to the Act an unfair burden which in fairness and equity should be borne by all citizens of the State.

13

43.    By retaining such accruals and using them for State purposes, defendants have violated and continue to violate the prohibition against taking private property without payment of just compensation contained in Article I, §15 of the Illinois Constitution.

44.    Defendants' unlawful use and retention of the earnings on plaintiffs' and the Class's private property is a taking of such property without just compensation, and so a deprivation of the plaintiffs' and the Class's rights secured under Article I, §15 Illinois Constitution.

<u>COUNT II</u>

<u>(ON BEHALF OF PLAINTIFFS AND THE CLASS)</u>

45.    Plaintiffs reallege all preceding paragraphs as if fully set forth here.

46.    The Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment to the United States Constitution, provides in relevant part: "private property [shall not] be taken for public use, without just compensation."

47.    The interest, dividends and other accruals earned on private property owned by plaintiffs and the Class while in the defendants' custody pursuant to the Act is itself private property.

48.    The Act and the defendants' policy and practice of not returning dividends, interest and accruals provide a windfall to the State and place upon property owners whose private property has been taken into custody by the defendants pursuant to the Act an unfair burden which in fairness and equity should be borne by all citizens of the State.

49.    By retaining such accruals and using them for State purposes, defendants have violated and continue to violate the Fifth and Fourteenth Amendments' prohibition against taking private property without payment of just compensation.

14

50.    42 U.S.C. §1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

51.    At all times, in repeatedly, systematically and uniformly using and retaining plaintiff's and the Class's private property, defendants acted under color of state law.

52.    Defendants' unlawful use and retention of the earnings on plaintiffs' and the Class's private property is a taking of such property without just compensation, and so a deprivation of the plaintiffs' and the Class's rights secured under the Fifth and Fourteenth Amendments to the United States Constitution and a violation of 42 U.S.C. §1983.

## COUNT III

### (ON BEHALF OF PLAINTIFF CANEL INDIVIDUALLY)

53.    Plaintiff James Canel reallege all preceding paragraphs as if fully set forth here.

54.    Plaintiffs submitted a proper and complete request to defendants for the return of plaintiff's shares of Patrick Industries.

55.    Despite approving plaintiff's request, as shown by the fact that defendants returned 200 shares, defendants have failed and refused to return, and continue to hold, plaintiff's additional 88 shares, plus other income derived from post-liquidation, post-remittal investment of funds, if any.

15

56.    Defendants' failure and refusal to return these 88 shares and income is in violation of §20 of the Act.

WHEREFORE, plaintiffs pray that the Court:

57.    Determine that Count I of this action may be maintained as a class action pursuant to §2-801 of the Illinois Code of Civil Procedure on behalf of the Class defined herein and declare plaintiffs to be proper Class representatives and their counsel to be Class counsel;

58.    Declare the retention of dividends, interest and other accruals on private property deemed abandoned and taken into custody by the State of Illinois pursuant to the Illinois Disposition of Unclaimed Property Act, 765 ILCS 1025/1 *et seq.*, to be an unconstitutional taking of private property without just compensation pursuant to Article I, §15 of the Constitution of the State of Illinois and the Fifth and Fourteenth Amendments to the United States Constitution and a violation of 42 U.S.C. §1983;

59.    Find that defendants' policy and practice in failing to return dividends, interest and other accruals to property held by the defendants as custodian under the Illinois Uniform Disposition of Unclaimed Property Act is an unconstitutional taking of private property without just compensation under Article I, §15 of the Illinois Constitution and the Fifth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. §1983;

60.    Enter a temporary, preliminary and/or permanent order providing for appropriate equitable and injunctive relief to ensure the return of plaintiffs' and the Class's private property and enjoining defendants from pursuing the illegal policies, acts and practices complained of herein and providing an accounting that identifies all persons who submitted approved claims and whose

property has been returned to them without payment of dividends, interest or other accruals earned

on such property while in the State's possession;

     61.   Award plaintiffs and the Class their reasonable attorneys' fees and costs pursuant to

42 U.S.C. §1988;

     62.   Award counsel for plaintiffs and the Class reasonable attorneys' fees, together with

reimbursement of expenses and costs of suit as allowed by law;

     63.   Order defendants to return to plaintiff Canel his 88 shares of Patrick Industries which

defendants have wrongfully withheld pursuant to the Act plus any other income derived from the

custody of plaintiff Canel's property, and

     64.   Award such other and further relief as the Court deems just and proper.

JAMES H. CANEL and DAVID L. CWIK as
Administrator, Individually and on behalf of the Class


By: _____

One of the Attorneys for Plaintiffs

| | |
|---|---|
| William J. Harte | Arthur T. Susman |
| William J. Harte Ltd. | Charles R. Watkins |
| 111 W. Washington Street, Suite 1100 | John R. Wylie |
| Chicago, Illinois 60602 | Susman & Watkins |
| Telephone:  (312) 726-5015 | Two First National Plaza, Suite 600 |
| Firm No.  04410 | Chicago, Illinois 60603 |
| | Telephone:  (312) 346-3466 |
| | Firm No.  35557 |

Dated:  December 2, 2004

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DWOND DONAHUE, | ) |
| JEROME FOUNTAIN, | ) |
| BERNARDO GARCIA, | ) |
| DARRYLY JOHNSON, | ) |
| ARCHIE MITCHELL, | ) |
| BERNARD RHONE, | ) |
| JARROD RODRIGUEZ, | ) |
| EDWARD SANDERS, | ) |
| ROBERTO SEGURA, | ) |
| JAMAAR TURNER, | ) |
| RAYMONT DAVIS, | ) |
| aka Kevin Curtis, | ) |
| EDDIE MACON, | ) |
| aka Eddie Adams | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| COOK COUNTY, | ) |
| COOK COUNTY SHERIFF | ) |
| THOMAS DART, in his | ) |
| official capacity, | ) |
| TIMOTHY REED, Star No. 7793, | ) |
| in his individual capacity, | ) |
| DAVID GONZALEZ, Star No. 4054, | ) |
| in his individual capacity, | ) |
| SGT. RACHELLE BOONE, Star No. 1064, | ) |
| in her individual capacity, and | ) |
| her supervisory Section 1983 capacity, | ) |
| ROBERT BUCHANAN, Star No. 7006, | ) |
| in his individual capacity, | ) |
| GLEN DEWLOW, Star No. 1626, | ) |
| in his individual capacity, | ) |
| FRANK NAVARRO, Star No. 6237, | ) |
| in his individual capacity, | ) |
| RICHARD MASON, Star No. 3474, | ) |
| in his individual capacity, | ) |
| PEDRO ORNELAS, Star No. 4592, | ) |

**FILED**

AUG 1 3 2007    NR

AUG 13 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

07CV 4534
JUDGE GOTTSCHALL
MAGISTRATE JUDGE COLE

1

| in his individual capacity, | ) |
| DAMEAL PRICE, Star No. 7824, | ) |
| in his individual capacity, | ) |
| RICHARD SCHALLMO, Star No. 7316, | ) |
| in his individual capacity, | ) |

Defendants.

## COMPLAINT

Jurisdiction/Venue

1. This incident occurred on August 16, 2006, in Division V, Cook County Jail, 2700 S. California, Chicago, Cook County, Illinois. The jurisdiction of this court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983, § 1988, the judicial code 28 U.S.C. § 1331 and § 1343(a); the Constitution of the United States, and pendent jurisdiction, as provided under U.S.C. § 1367(a).

Parties

2. At the time of the occurrence, Plaintiffs Dwond Donahue, Jerome Fountain, Bernardo Garcia, Darryl Johnson, Archie Mitchell, Bernard Rhone, Jarrod Rodriguez, Edward Sanders, Roberto Segura, Jamaar Turner, Raymont Davis (aka Kevin Curtis), and Eddie Macon (aka Eddie Adams) were all pre-trial detainees in Division V, Cook County Jail.

3. At the time of the occurrence, Defendant Michael Sheahan was the Cook County Sheriff, and the employer of the Sheriff's Deputies referred to in this case. However, since this incident occurred, Defendant Sheahan has been replaced in his position by Defendant Thomas Dart, the new Cook County Sheriff. Defendant Dart is sued in this case in his official capacity as Cook County Sheriff, based on a theory of *respondeat superior*.

4. In taking the actions described in this Complaint, Cook County Sheriff Deputies

2

Reed, Gonzalez, Boone, Buchanan, Dewlow, Navarro, Mason, Ornelas, Price, and Shallmo

engaged in willful and wanton misconduct (and/or alternatively negligent conduct) in the course

and scope of their employment, and also acted under color of law.

     5.    Cook County Sheriff's Sgt. Boone is being sued additionally under the doctrine of

Section 1983 supervisory liability, *i.e.*, she was a supervisor of the named Defendant Sheriff's

Officers (other than Dart) and/or other unnamed Sheriff's correctional officers.  Boone had at

least some personal involvement in the actions described in this complaint in that she knowingly

and/or with reckless indifference directed and/or consented to the actions described in the

complaint, the proximate result was the Plaintiffs' damages, as described more fully below.

     6. Defendant Cook County is the indemnifying entity for actions taken by Defendant

Dart and/or his employees, including but not limited to the named Defendants, and the County is

being sued on an indemnification theory.

Facts

     6. On or about August 16, 2006, an inmate in Division V – not any of the Plaintiffs – got

into a physical altercation with one of the Sheriff's Deputies, the result of which was the deputy

sheriff being severely injured, requiring medical attention.

     7. In response to this incident, even though none of the Plaintiffs were involved at all in

the beating of the deputy sheriff, numerous Cook County Sheriff's Deputies, including but not

limited to Defendants Reed, Gonzalez, Boone, Buchanan, Dewlow, Navarro, Mason, Ornelas,

Price, and Schallmo, employees of Defendant Cook County Sheriff, acting in the course and

scope of their employment and under color of law, severely beat the Plaintiffs, the proximate

result of which was severe physical, emotional, and/or pecuniary injuries.

3

COUNT I – Illinois State Law Battery Claim –
Plaintiffs against Defendant Dart in His Official Capacity –
Respondeat Superior Liability

8.  Plaintiffs reallege what has previously been alleged in the Complaint.

9.  In taking the actions described above, several Cook County Sheriff's deputies, acting

within the scope and duty of their employment as Cook County correctional officers, willfully

and wantonly battered the Plaintiffs, the proximate cause of which was bodily harm and damages

to the Plaintiffs, described more fully above.

10.  In taking the actions described above, the above-named Defendants acted in the

course and scope of their employment with the Cook County Sheriff's Office, of which

Defendant Dart has replaced Michael Sheahan as the Deputies' principal employer, and thus Dart

is liable to the Plaintiffs under the theory of *respondeat superior*.

WHEREFORE, Plaintiffs demand compensatory damages against Defendant Dart, plus

the costs of this action, and any such other and additional relief as this court deems equitable and

just.

COUNT II – Illinois State Law Negligence Claim –
Plaintiffs against Defendant Dart in His Official Capacity –
Respondeat Superior Liability

11.  Plaintiffs reallege what has previously been alleged in the Complaint.

12.  Alternative and/or additionally, in taking the actions described above, several Cook

County Sheriff's deputies, acting within the scope and duty of their employment as Cook County

correctional officers, had a duty to protect the Plaintiffs, the correctional officers breached that

duty in acting taking negligent acts to prevent the Plaintiffs from being physically harmed, the

proximate cause of which was bodily harm and damages to the Plaintiffs, described more fully

4

above.

13. In taking the actions described above, the above-named Defendants acted in the

course and scope of their employment with the Cook County Sheriff's Office, of which

Defendant Dart has replaced Michael Sheahan as the Deputies' principal employer, and thus Dart

is liable to the Plaintiffs under the theory of *respondeat superior*.

WHEREFORE, Plaintiffs demand compensatory damages against Defendant Dart, plus

the costs of this action, and any such other and additional relief as this court deems equitable and

just.

COUNT III – 42 U.S.C. 1983 –
Excessive Force/Failure to Intervene to Prevent the Use of Excessive Force –
Plaintiffs against Defendants Reed, Gonzalez, Boone, Buchanan, Dewlow, Navarro, Mason,
Ornelas, Price, and Schallmo.

14. Plaintiffs reallege what has previously been alleged in the Complaint.

15. In taking the actions described above, Defendants Reed, Gonzalez, Boone,

Buchanan, Dewlow, Navarro, Mason, Ornelas, Price, and Schallmo, used excessive force on the

Plaintiffs and/or failed to prevent Deputy Sheriffs' use of excessive force on the Plaintiffs, even

though each one of them had a reasonable opportunity to do so, the proximate cause of which

was bodily harm and damages, described more fully above.

16. In taking the actions described above, the above-named Defendants acted under color

of law and in the course and scope of their employment with the Cook County Sheriff's Office.

WHEREFORE, Plaintiffs demand compensatory and punitive damages against

Defendants Reed, Gonzalez, Boone, Buchanan, Dewlow, Navarro, Mason, Ornelas, Price, and

Schallmo, plus attorneys' fees and costs, and any such other and additional relief as this court

5

deems equitable and just.

COUNT IV – 42 U.S.C. 1983 –
Supervisory Liability –
Plaintiffs against Defendant Boone

17. Plaintiffs reallege what has previously been alleged in the Complaint.

18. In taking the actions described above, Defendant Boone acted in her role a supervisor of the named Defendant Sheriff's Officers (other than Dart) and/or other unnamed Cook County Sheriff's correctional officers.

19. Boone had at least some personal involvement in the actions described in this complaint in that she knowingly and/or with reckless indifference directed and/or consented to the actions described in the complaint, the proximate result was the Plaintiffs' damages, as described more fully below.

WHEREFORE, Plaintiffs demand compensatory and punitive damages against Defendant Boone, plus attorneys' fees and costs, and any such other and additional relief as this court deems equitable and just.

COUNT V – Defendant Cook County (Indemnification)

20. Plaintiffs reallege what has been previously alleged in this Complaint.

21. Defendant Cook County is the indemnifying entity for the actions, described above, of Defendant Michael Sheahan and/or the Deputy Sheriffs under his employment.

WHEREFORE, should Defendant Thomas Dart and/or any named or unnamed Sheriff's Deputies employed by the Cook County Sheriff's Office be found liable on one or more of the claims set forth above, Plaintiffs demand that Defendant Cook County be found liable for any judgment (other than punitive damages) they obtain thereon.

6

**PLAINTIFFS DEMAND TRIAL BY JURY.**

Respectfully submitted,

By _____
Richard Dvorak,
One of the Attorneys for the Plaintiffs.

Richard Dvorak
Neil Toppel
Brian Barrido
Dvorak, Toppel & Barrido
3859 W. 26th Street
Chicago, IL 60623
(773) 521-1300 (phone)
(773) 521-4400 (fax)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GARY FREDERICK ELLISON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No.:  08-CV-3247 |
| | ) | JUDGE LEINENWEBER |
| MICHAEL MINNEAR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF MOTION**

TO:     ILLINOIS DEPARTMENT OF CORRECTIONS
        100 West Randolph
        Suite 4-200
        Chicago, IL  60601

        PLEASE TAKE NOTICE THAT on **July 30, 2008, at 9:30 a.m.,** or as soon thereafter as this Motion may be heard, I shall appear before the Judge Harry D. Leinenweber, or any Judge sitting in his stead, in Courtroom 1941, in the Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, 60604, and there present the attached *Motion to Withdraw as Counsel for Plaintiff, Gary Frederick Ellison,* a copy of which is hereby served upon you.

                            Respectfully submitted,

                            By:  /s/James M. Lydon
                            James M. Lydon - Atty Bar No. 06211191

HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, IL 60601
Phone No.:  312-704-3000
Fax No.:  312-704-3001
Firm No.: 90384
E-mail Address: jlydon@hinshawlaw.com

**CERTIFICATE OF SERVICE**

        I, the undersigned, an attorney certify that I electronically filed this Notice, Motion and attachments referenced herein through the Court's ECM/CF system which will send notification of such filing to above noted party.

Dated:  July 23, 2008                    /s/JAMES M. LYDON

6343770v1 7048395